UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| INSPIRED PURSUITS, LLC, <br> DRJ ENGINEERING, LLC, <br> QUALTIM, INC., CENTER FOR <br> BUILDING INNOVATION, LLC, <br> KIRK GRUNDAHL, AND SUZANNE <br> GRUNDAHL <br><br> *Plaintiffs* <br> v. <br><br> MILLER MARTIN PLLC, <br> JAMES T. WILLIAMS, ROBERT PARSLEY, <br> AND STEPHEN KABAKOFF <br><br> *Defendant* | CASE NO.: _____ |

## COMPLAINT

Plaintiffs, by their undersigned attorney, Mayville La Rosa, files this Complaint against Miller & Martin, PLLC ("Miller Martin") for publicly disclosing trade secrets without express or implied consent. At the time of disclosure, Miller Martin knew or had reason to know that the trade secret information was acquired under their duty of confidentiality and in the course of settlement negotiations.

## PARTIES

1. Inspired Pursuits, LLC ("IP-LLC") is a limited liability company organized and existing under Wisconsin law. Currently, the members are Kirk Grundahl and Suzanne Grundahl. This entity would execute the business model at issue ("Developed TS/IP").

2. Kirk Grundahl ("Kirk") is an individual citizen of Wisconsin. He holds the following positions relevant to this case: a) one of the founding members of IP-LLC, b) President of Qualtim, Inc., and c) Sole member of DrJ Engineering, LLC.

3. Suzanne Grundahl is an individual citizen of Wisconsin. She holds the following position relevant to this case: a) one of the founding members of IP-LLC and b) Vice-President of Qualtim, Inc.

4. DrJ Engineering, LLC ("DrJ") is a limited liability company organized and existing under Wisconsin law. The sole member is Kirk Grundahl. DrJ's principal place of business is in Madison, Wisconsin. DrJ was established in 2011 to undertake professional structural engineering (including metal plate connected wood truss engineering), building design and ANAB accredited ISO/IEC 17065 product evaluation and certification services. DrJ was one of the collaborative entities that would implement the secret IP-LLC business model.

5. Center for Building Innovation ("CBI") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. CBI was established in 2020 to undertake ANAB accredited ISO/IEC 17020 inspection, ISO/IEC 17025 testing, and related structural engineering, building science analysis and certification services.

6. Qualtim, Inc. ("Qualtim") is a corporation incorporated and existing under Wisconsin law. The shareholders are Kirk Grundahl and Suzanne Grundahl. Qualtim's principal place of business is in Madison, Wisconsin. Qualtim engages in the business of providing consulting services where innovative testing, building engineering, building science engineering, regulatory, product/market development, training, certification and information technology solutions are needed. Qualtim was one of the collaborative entities that would implement the IP-LLC business model.

7. Miller Martin, PLLC ("Miller Martin") is a Tennessee professional limited liability Company organized and existing under Tennessee law. Plaintiffs currently do not have detailed information on Miller Martin's shareholders. Miller Martin has four (4) office locations: 1) Chattanooga, Tennessee, 2) Atlanta, Georgia, 3) Charlotte, North Carolina, and 4) Nashville,

Tennessee. Miller Martin is registered as foreign entities in Georgia and North Carolina. Miller Martin's principal place of business is in Chattanooga, Tennessee.

8. Robert Parsley is an individual citizen of Tennessee. He is a licensed attorney and actively practicing in the state of Tennessee.

9. James T. Williams is an individual citizen of Tennessee. He is a licensed attorney and actively practicing in the state of Tennessee.

10. Stephen Kabakoff is an individual citizen of Georgia. He is a licensed attorney and actively practicing in the state of Georgia.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over the subject matter of the Complaint under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

12. Pursuant to 28 U.S.C. §1391(b)(2) venue is proper in this District because a substantial part of the property that is the subject of the action is situated in Wisconsin. In this case, the property at issue are trade secrets developed by individuals and business entities domiciled in the state of Wisconsin.

13. This Court also has supplemental jurisdiction over the claims under Wis. Stat § 134.90 pursuant to 28 U.S.C. §1367(a).

14. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) because all individual Plaintiffs are citizens of Wisconsin and Plaintiff business entities have their principal place of business in Madison, Wisconsin. Defendant was incorporated and has its principal place of business in Chattanooga, Tennessee. Plaintiffs and Defendants are citizens of different states. The amount in controversy here is the value of the trade secrets that is at least $23 million, which is in excess of $75,000.

## APPLICABLE STATUTES

15. The Defend Trade Secrets Act 2016 authorizes a trade secret owner to file a civil action in federal district court to seek relief for trade secret misappropriation related to a product or service used in or intended for use in interstate commerce. 18 U.S.C. § 1836 (b).

16. Under 18 U.S.C.A. § 1839 (3), the term "trade secret" includes business, technical, or engineering information including but not limited to plans, compilations, techniques, methods, procedures, programs, whether tangible or intangible, and whether or how stored, compiled, memorialized physically, electronically, or in writing if the owner has taken reasonable measures to keep such information secret, and the information derives independent economic value, actual or potential from not being generally known.

17. Immunity from liability arising out of a federal or state trade secret violation requires that a civil complaint that discloses a trade secret must be filed under seal. 18 U.S.C. § 1833(b)(1)(B).

18. Wis. Stat. § 134.90(2)(b)(2)(b) states that no person may misappropriate a trade secret by disclosing or using without express or implied consent a trade secret of another if at the time of disclosure knew or had reason to know that the obtained knowledge was through acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

## THE TRADE SECRETS

19. Plaintiffs repeat, allege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

20. The trade secrets are explained with specificity in Exhibit A attached.

21. Plaintiffs implemented measures to keep the trade secrets confidential including non-disclosure agreements obtained from parties who had access to the trade secrets.

**INTERSTATE COMMERCE REQUIREMENT**

22. Plaintiffs developed an innovative approach to the structural building component manufacturing industry and business model that would be used in residential and commercial construction across the United States.

**INDEPENDENT ECONOMIC VALUE**

23. In the course of developing the trade secrets, Plaintiffs invested at least $23 million dollars in time and expenses that spanned over a decade.

24. In a controlled environment, the trade secrets applied generated a record-breaking profit year.

25. The trade secret business model was set for market release where the overall market size of the structural building component truss industry is greater than $5 billion. The major trade secret business model competitor[1] is estimated to sell greater than $1 billion as a supplier of truss plates, software, engineering and equipment. The value of engineering and truss design software is, at a minimum, 5% of costs of goods sold, per past truss industry financial performance surveys, so the value of the trade secrets at 100% market share would be more than $225,000,000 annually. This is consistent with the 70% market share competitor making more than $1 billion, where these calculations will be easy to refine and perfect given industry data available.

**NOT GENERALLY KNOWN, MAINTENANCE OF SECRECY**

26. From the infant stages of the development of the trade secrets, the process was kept confidential. There was no advertisement and, outside of executive leadership, employees of the Plaintiffs were not privy to the strategic development of the trade secrets.

---

[1] https://leadiq.com/c/mitek/5a1d95e82300005b00848873#:~:text=How%20much%20revenue%20does%20MiTek,annual%20revenue%20reached%20%24501B. (Last visited January 30, 2025).

27. Plaintiffs gathered and evaluated a wide range of data in order to produce proprietary calculations, proprietary testing, proprietary engineering, analysis and interpretations of building codes, understanding the potential for collaborator success, understanding the competitive control of direct competitors, and evolving business strategies/implementation tactics when new intelligence emerged. This unique and exclusive knowledge and intelligence was intended to create trade secrets that would power a successful competitive future, capturing market share in an industry controlled by a few large companies.

28. Prior to the trade secrets being fully launched into the market, Plaintiffs required those who had access to the trade secrets to sign nondisclosure agreements.

## ACCESS TO THE TRADE SECRET

29. Upon the death of a business partner, a dispute arose between Plaintiffs and the successor of the business partner.

30. Defendants represented the successor of the business partner.

31. In an attempt to explain the dispute to the Defendants who were attorneys, Plaintiffs disclosed the trade secrets in a series of memorandums that were clearly marked confidential and trade secret information.

32. Defendants unilaterally ceased settlement discussions and filed a complaint against Plaintiffs in the federal district court of Tennessee. Defendants, who are attorneys who specialize in intellectual property litigation, filed the complaint against Plaintiffs using the confidential memorandums as exhibits without filing them under seal.

33. Defendants' access to the trade secrets was acquired under their duty to keep the settlement negotiation communications confidential.

34. All memorandums containing the developed trade secrets were marked confidential intellectual property and trade secrets.

## COUNT I: MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO 18 U.S.C. § 1836(b)

35. Plaintiffs repeats, alleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

36. When the Plaintiffs' business partner unexpectedly passed away, a dispute arose between Plaintiffs and the business partner's successor who was represented by Defendants.

37. In the course of settlement negotiations, Plaintiffs disclosed to Defendants the trade secrets developed by Plaintiffs and the business partner who passed away. Plaintiffs' purpose in disclosing the trade secrets to Defendants was because Defendants were the attorneys representing the successor of Plaintiffs' business partner.

38. The trade secrets were disclosed in a series of memorandums that were marked "Confidential Intellectual Property (IP) and/or Trade Secrets (TS)" at the top in certain instances. Below are examples:



Confidential Paragon/CCI Market Research, IP/TS, Engineering & Business Regulations Roadmap
Truss Pal Project
March 22, 2024

**Confidential Intellectual Property (IP) and/or Trade Secrets (TS)**[1,2,3]

**Activity:** Paragon/CCI/Qualtim – Truss Pal Market Research, IP/TS, Engineering & Business Regulations

     THE QUALTIM FAMILY OF BRANDS
Where building innovation thrives.

Paragon/CCI Truss Pal Market Research, IP/TS, Engineering & Business Regulations
Confidential intellectual property (IP) and trade secrets (TS) is protected by Defend Trade Secrets Act 2016, © 2024 Qualtim, Inc.

39. At the footer of every page of documents that were shared subsequent to the March 22, 2024 memorandum, the documents were marked "Confidential intellectual property (IP) and trade secrets (TS) is protected by Defend Trade Secrets Act 2016, ©2024 Qualtim, Inc.,"

"Confidential Intellectual Property is protected by Defend Trade Secrets Act 2016, © 2024 Qualtim, Inc." "Confidential Intellectual Property is protected by Defend Trade Secrets Act 2016, © 2024 Qualtim, Inc." or "Confidential Intellectual Property (IP) and trade secrets (TS) is protected by Defend Trade Secrets Act 2016, © 2024 Inspired Pursuits, LLC"

40. Plaintiffs communicated with Defendant Stephen Kabakoff with the understanding that as attorneys, they would keep the information confidential given his expertise in intellectual property and trade secrets.

41. Plaintiffs' purpose in communicating the trade secrets to Defendant Stephen Kabakoff was in attempt to avoid litigation.

42. Without any further discussions, Defendants filed a Complaint against Plaintiffs disclosing all the trade secrets disclosed to them in confidence.

43. The trade secrets were disclosed to the public in a Portable Document Format also known as .pdf as part of a complaint for declaratory judgment. Attached as Exhibit B are the series of memorandums disclosed to Defendants.

44. Defendants knew that the communications that contained trade secrets were disclosed to them under their duty of confidentiality.

45. Every page that contained trade secret information was marked appropriately that Plaintiffs were asserting trade secrets.

46. Despite Defendants' knowledge, or being under reasonable notice of the trade secrets, Defendants disclosed to the public without consideration of Plaintiffs' value of the trade secrets.

47. Defendants disclosed the trade secrets to the public to benefit themselves and to devalue the trade secrets in order to benefit their client.

## COUNT II: MISAPPROPRIATION OF TRADE SECRET PURSUANT TO WIS. STAT. § 134.90

48. Plaintiffs repeat, allege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

49. As attorneys, Defendants were privy to the trade secret information obtained in the course of negotiations.

50. Defendants used the trade secrets in a court proceeding without filing it under seal.

51. Defendants used the trade secrets to benefit their position in litigation and devalue the trade secrets for the benefit of their client.

52. Defendants' use of the trade secrets constitutes misappropriation in violation of Wis. Stat. §134.90.

## DAMAGES

53. As a result of Defendants' misappropriation, Plaintiffs have been and continue to be damaged and irreparably injured, including without limitation, the loss of current and future sales and profits they would have earned but for Defendants' actions, and damage to Plaintiffs' reputation among potential and existing customers, business partners, investors, and in the industry in general.

54. Defendants' misappropriation is willful and malicious and thereby entitles Plaintiffs to an award of exemplary damages.

55. Defendants' misappropriation of Plaintiffs' confidential and trade secret information has caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

56. A judgment in Plaintiffs' favor that Defendants wrongfully and maliciously used Plaintiffs' trade secrets without consent;

57. A judgment in Plaintiffs' favor for damages for actual and future loss caused by the misappropriation of Plaintiffs' confidential information and trade secrets;

58. An award of exemplary damages in the amount not more than 2 times the amount of the damages awarded for actual loss and future loss caused by the misappropriation of Plaintiffs' confidential information and trade secrets;

59. An order awarding Plaintiffs' attorneys' fees;

60. An order awarding interest and costs; and

61. Such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

62. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully requests a trial by jury of any and all issues on which a trial by jury is available under applicable law.


Respectfully submitted,

/s/*Mayville La Rosa*
Mayville La Rosa, WI Bar 1119613
200 Verona Ave #5003
Verona, WI 53593
(608) 800-7353
mlarosa@kfinnovations.com


Attorney for Plaintiffs

Case: 3:25-cv-00073-wmc Document #: 1 Filed: 01/31/25 Page 11 of 11